IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARÍA ELVIRA PEREJOAN-PALAU, et al.,<br><br>        Plaintiffs<br><br>             v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES (USCIS) of the U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>        Defendant | CIVIL NO. 09-1253 (JP) |

## OPINION AND ORDER

Before the Court is Defendant U.S. Citizenship and Immigration Services of U.S. Department of Homeland Security's ("USCIS") motion to dismiss (**No. 8**) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Also, before the Court are Plaintiffs' opposition (No. 16) and Defendant's reply (No. 19) to Plaintiffs' opposition. Plaintiffs brought the instant action requesting that the Court order Defendant USCIS to process Plaintiffs' diversity visa application as if the 2007 diversity visas were still available. Defendant then filed a motion to dismiss based on Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6). For the reasons stated herein, Defendant's motion to dismiss is hereby **GRANTED**.

CIVIL NO. 09-1253 (JP)          -2-

## I.    **FACTUAL ALLEGATIONS**

Plaintiffs in this case are Maria Elvira Perejoan ("Elvira") and Cristiano Carciani ("Carciani"). Elvira, a native of Spain, arrived in Puerto Rico in 2003 while Carciani, a native of Italy, arrived in 2001. In 2004, Elvira and Carciani married in Puerto Rico.

Since Plaintiffs wanted to stay in Puerto Rico permanently, they applied, in November of 2005, for an immigrant visa under the 2007 Diversity Visa Program ("DV Program"). On March 20, 2007 and six months into the fiscal year, Plaintiff Elvira received a letter from the Department of State, Kentucky Consular Center in Williamsburg, Kentucky, informing her that she had been selected as a candidate for the DV Program. Said letter contained all the procedural information necessary to obtain a diversity immigrant visa and instructed Plaintiff Elvira to complete the Immigrant Visa Application forms DS 230, parts I and II, on behalf of herself and her husband. Plaintiffs could apply to the USCIS for adjustment of status within the period of October 1, 2006 until September 30, 2007. Plaintiffs were also warned that their status had to be adjusted by September 30, 2007.

On April 27, 2007, Plaintiffs submitted the necessary documentation to become American citizens. The Department of State confirmed the receipt of both sets of DS 230 application forms and the Supplemental Registration of Elvira for the DV Program on May 9, 2007. Said confirmation instructed Plaintiff Elvira to submit the

CIVIL NO. 09-1253 (JP)          -3-

original notification of selection in the DV Program to the local USCIS. Elvira submitted said notification on May 17, 2007. Over the next three months, Plaintiffs visited the USCIS office in Guaynabo to ensure they completed everything accurately. At every visit, USCIS informed Plaintiffs that USCIS had ninety days to take action and that Plaintiffs should not worry because they had until September 30, 2007 to process any further documentation.

On August 27, 2007, Carmen López ("López"), from USCIS's San Juan office, provided Plaintiffs with all the necessary forms that Plaintiffs had to complete and submit prior to the September 30, 2007 deadline. Upon receiving said forms, Plaintiffs visited the Office for Foreign Citizens of the Puerto Rico Department of State where they were helped by Ada Pollonio. Plaintiffs mailed all the forms, supporting documents and fees, on September 18, 2007, to the USCIS office in Chicago. Said USCIS office confirmed receipt on September 28, 2007. In October 2007, USCIS informed Plaintiffs that they had to have their Biometrics taken, which Plaintiffs did on October 16, 2007.

Plaintiffs continued to visit the USCIS offices to inquire about the status of their application and were informed that the DV process could not be accelerated until the ninety day period elapsed. On January 14, 2008 and when the ninety day period elapsed, Plaintiffs returned to the USCIS office to inquire about the status of their case. During said visit, López discovered that Plaintiffs' file had

CIVIL NO. 09-1253 (JP)            -4-

been misplaced and no action had been taken.  Plaintiffs continued to visit the USCIS offices, but were told by USCIS's officers that it was useless.

On June 13, 2008, Plaintiffs received their appointment letters. Elvira's letter, dated June 9, 2008, scheduled her interview for June 16, 2008. Carciani's letter, also dated June 9, 2008, scheduled his interview for May 24, 2008, seventeen days prior to the date of the letter.  Because of the confusion, Plaintiffs contacted the USCIS office and were told that they should both appear on June 18, 2008 irrespective of the dates listed in said appointment letters. Plaintiffs were assisted by Teresa González ("González") when they arrived at USCIS on June 18, 2008.  González informed Plaintiffs that, after reviewing their files, there was no evidence of Elvira being selected for the DV Program and that Plaintiff Elvira was not able to file the I-130 petition for her husband's adjustment of status.  Accordingly, Plaintiff Carciani's case was denied.

González then informed Plaintiffs that Elvira was eligible for adjustment of status and that there was still a visa available for her.  As a result, González told Plaintiffs that Elvira could receive her visa that same day and file her I-130 petition for her husband. González consulted with her supervisor after informing Plaintiffs of this option.  After said consultation, González informed Plaintiffs that the option she mentioned was not available.  Furthermore, González informed Plaintiffs that they were no longer eligible for

CIVIL NO. 09-1253 (JP) -5-

a visa because Plaintiff Elvira had failed to secure a visa number prior to the September 30, 2007 deadline. Plaintiffs received letters from USCIS denying their adjustment of status request on July 9, 2008 and on July 17, 2008.

With the help of counsel, Plaintiffs filed two motions, on August 11, 2008 and August 17, 2008, to reopen and reconsider their case. Said motions were denied by USCIS on September 17, 2008. Between July 2008 and February 2009, Plaintiffs made various attempts, to no avail, to resolve their situation. On March 13, 2009, Plaintiffs then filed the instant action.

## II. **LEGAL STANDARD FOR A MOTION TO DISMISS**

According to the Supreme Court, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007). As such, in order to survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face, not merely conceivable. Id. at 1974. The First Circuit Court of Appeal has interpreted Twombly as sounding the death knell for the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94-95 (1st Cir. 2007), quoting Twombly, 127 S. Ct.

CIVIL NO. 09-1253 (JP)          -6-

at 1969. Still, a court must "treat all allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 997 (1st Cir. 1992).

### III. ANALYSIS

Defendant moves for the Court to dismiss the complaint against it, arguing that the Court lacks jurisdiction to grant Plaintiffs' petition to force Defendant USCIS to process their application. Plaintiffs oppose the motion arguing that: (1) the Court should adopt an interpretation of 8 U.S.C. § 1154(a)(1)(I)(ii)(II) that would allow judicial review in the instant case; (2) the Court retains mandamus jurisdiction; and (3) the Court should apply Administrative Estoppel to prevent the Government from avoiding its duty. The Court will now consider the parties' arguments.

#### A.   8 U.S.C. § 1154(a)(1)(I)(ii)(II)

8 U.S.C. § 1154(a)(1)(I)(ii)(II) provides "[a]liens who qualify, through random selection, for a visa under section 1153(c) of this title shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected."

In its motion to dismiss, Defendant USCIS argues that, under 8 U.S.C. § 1154(a)(1)(I)(ii)(II), Congress has deprived the Court of jurisdiction to confer these Plaintiffs a diversity visa and adjustment of status once the 2007 fiscal year ended on September 30, 2007. Plaintiffs oppose this motion and argue that: (1) the Court

CIVIL NO. 09-1253 (JP)          -7-

should interpret 8 U.S.C. § 1154(a)(1)(I)(ii)(II) in a contextual manner that would grant this Court jurisdiction; and (2) the interpretation suggested by Defendant would violate the U.S. Constitution.

### 1.   Interpretation of 8 U.S.C. § 1154(a)(1)(I)(ii)(II)

As a general rule, Congressional intent to limit the Court's jurisdiction must be clear and convincing before a Court will limit a petitioner's access to judicial review. See, e.g., Bd. of Governors of the Federal Reserve System v. Mcorp. Financial, Inc., 502 U.S. 32, 44 (1991); Traynor v. Turnage, 485 U.S. 535, 542 (1988). As such, there is a general presumption in favor of judicial review of administrative actions. Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670 (1986).

Defendant argues that the language of 8 U.S.C. § 1154(a)(1)(I)(ii)(II) makes it clear and unambiguous that Congress intended to deprive the Court of jurisdiction to confer Plaintiffs a diversity visa and adjustment of status once the fiscal year ended. Plaintiffs oppose said conclusion on three grounds. First, they argue that the statute does not meet the "clear and convincing" requirement. Next, Plaintiffs argue that following Defendant's interpretation would lead to an absurd result. Lastly, Plaintiffs argue that a contextual reading of the statute would lead to the conclusion that the statute allows for judicial review.

CIVIL NO. 09-1253 (JP)          -8-

The analysis to determine the proper interpretation of a statute begins with the language of the statute. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999). When the language of the statute is unambiguous, the Court's analysis ends with the plain language of the statute. See id. (citing Connecticut National Bank v. Germain, 503 U.S. 249, 254 (1992)).

In the instant case, the Court determines that the statute is clear and unambiguous that the Court lacks jurisdiction to grant Plaintiffs' request. See Mohamed v. González, 436 F.3d 79, 80-81 (2nd Cir. 2006); Coraggioso v. Ashcroft, 355 F.3d 730, 734-35 (3rd Cir. 2004); Carrillo-González v. INS, 353 F.3d 1077, 1079 (9th Cir. 2003); Nyaga v. Ashcroft, 323 F.3d 906, 914-15 (11th Cir. 2003); Iddir v. INS, 301 F.3d 492, 501 (7th Cir. 2002).

Specifically, the Court finds that the statutory language "shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected" plainly means that aliens such as Plaintiffs who have been selected to qualify for a visa under the DV Program cannot be issued a visa after midnight of the final day of the fiscal year for which they were selected. Nyaga, 323 F.3d at 914. As such, when Plaintiffs were not issued a visa by September 30, 2007, Plaintiffs were no longer eligible to receive the visa. Accordingly, the Court determines that the Court lacks subject-matter jurisdiction to hear Plaintiffs' claim.

CIVIL NO. 09-1253 (JP)          -9-

**2.   Constitutionality of Interpretation**

Plaintiffs argue that the interpretation of 8 U.S.C. § 1154(a)(1)(I)(ii)(II) adopted by this Court is unconstitutional because it violates the Separation of Powers doctrine and Due Process.

*i.   Separation of Powers*

In their opposition to the motion to dismiss, Plaintiffs argue that Congress has exceeded its powers. Specifically, they argue that Congress has breached the Separation of Powers doctrine because the statute effectively bars the judicial branch from exercising its rightful power of judicial review.

Plaintiffs' argument is unavailing. The extent of lower federal courts' jurisdiction depends entirely on the statutory grants of Congress. Evans v. Thompson, 518 F.3d 1, 5-6 (1st Cir. 2008) (citing U.S. Const. Art. III, § 1). As such, Congress has great leeway to expand or restrict the jurisdiction of the lower federal courts. Id. at 6.

Furthermore, the Court notes that the United States Supreme Court "has repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." Fiallo v. Bell, 430 U.S. 787, 792 (1977) (quoting Oceanic Navigation Co. v. Stranahan, 214 U.S. 320, 339 (1909)).

CIVIL NO. 09-1253 (JP)          -10-

In the instant case, all Congress has done is limit the jurisdiction of federal courts and not, as Plaintiffs contend, eliminate it. Congress provides the Court with jurisdiction to order Defendant to adjudicate the Plaintiffs' status while Defendant still maintains the statutory authority to issue the visas. Iddir, 301 F.3d at 501 n.2. Accordingly, had Plaintiffs submitted their request to order Defendant to adjudicate their applications prior to the September 30, 2007 deadline, the Court would have been able to grant Plaintiffs meaningful relief. Based on the great leeway given to Congress on matters dealing with aliens, the Court finds that the restrictions established by Congress in 8 U.S.C. § 1154(a)(1)(I)(ii)(II) create no Separation of Powers issue.

### ii. *Due Process*

Plaintiffs also argue that the restriction created by Congress denies Plaintiffs their due process rights. Battaglia v. General Motors Corp., 169 F.2d 254, 257 (2nd Cir. 1948) (stating that Congress must not exercise its power "to deprive any person of life, liberty, or property without due process of law").

To succeed in a due process claim, Plaintiff must show that there is a cognizable liberty or property interest at stake. Júpiter v. Ashcroft, 396 F.3d 487, 492 (1st Cir. 2005). In the instant action, the Court concludes that Plaintiffs' Due Process claim fails because Plaintiffs have failed to point to anything showing that they have a cognizable liberty or property interest.

CIVIL NO. 09-1253 (JP)          -11-

Furthermore, if what Plaintiffs claim to have an interest in is the requested diversity visa or the adjustment of status, the Court finds that Plaintiffs do not have a property or liberty interest in either the visa or the adjustment of status. There is no property or liberty interest in the visa because being selected as a lottery winner of the DV Program does not guarantee that the person selected will receive a visa. Coraggioso, 355 F.3d at 732. It is a fact that the number of people who win the lottery exceeds the number of diversity visas that can be awarded. Id. Thus, the winner of the lottery, such as Plaintiffs, only obtain a right to apply to receive a visa through the DV Program. Id. As such, Plaintiffs lack a cognizable property and/or liberty interest in the visas.

Also, the First Circuit has clearly held that adjustment of status is not a cognizable liberty or property interest for purposes of due process. McCreath v. Holder, 573 F.3d 38, 41 (1st Cir. 2009) (citing DaCosta v. González, 449 F.3d 45, 50 (1st Cir. 2006)). Accordingly, the Court determines that Plaintiffs' Due Process argument fails because Plaintiffs lack a cognizable property and/or liberty interest.

**B.   Mandamus Jurisdiction**

Plaintiffs also argue that, in the complaint, they requested mandamus relief when they moved for the Court to "order the Defendant USCIS to process their complaint." Then Plaintiffs argue that the instant case is distinguishable from Iddir v. INS, 301 F.3d 492

CIVIL NO. 09-1253 (JP)          -12-

(7th Cir. 2002), where the Court dismissed the case on the grounds that it lacked mandamus jurisdiction. Plaintiffs argue that the instant case is different because Defendant USCIS, unlike the Defendant in <u>Iddir</u>, has a non-discretionary duty to adjudicate Plaintiffs' visa application on the merits. Defendant argues that the writ of mandamus does not provide the Court with subject-matter jurisdiction.

The Court agrees with Defendant that a writ of mandamus, 28 U.S.C. § 1361, does not provide an independent ground for jurisdiction. <u>Starbuck v. City and County of San Francisco</u>, 556 F.2d 450, 459 n.18 (9th Cir. 1977). As such, since the Court has determined that it lacks subject-matter jurisdiction for the claim under 8 U.S.C. § 1154(a)(1)(I)(ii)(II) and Plaintiffs have not identified any other independent source of jurisdiction, the Court determines that it lacks jurisdiction to hear the request for a writ of mandamus. <u>Akins v. Saxbe</u>, 380 F. Supp. 1210, 1217 (D. Me. 1974) (citing <u>J.C. Penney Co. v. U.S. Treasury Department</u>, 439 F.2d 63, 68 (2nd Cir. 1971)). Accordingly, the Court determines that Plaintiffs cannot establish jurisdiction under this statute.

### C.  **Administrative Estoppel**

Plaintiffs in the instant case argue that the motion to dismiss should not be granted because the doctrine of Administrative Estoppel is applicable here. Defendant argues that Administrative Estoppel is not available in this case.

CIVIL NO. 09-1253 (JP)          -13-

Administrative Estoppel is an equitable remedy used by courts to avoid injustice. Fredericks v. Commissioner of Internal Revenue, 126 F.3d 433, 438 (3rd Cir. 1997). To apply estoppel against the government, Plaintiff must prove that: (1) the government engaged in affirmative misconduct going beyond mere negligence; (2) the government made a knowing false representation or concealment of material facts to a party ignorant of the facts with the intention that the other party should rely on it; and (3) the wrongful acts must cause a serious injustice and the public's interest must not suffer undue damage by the imposition of liability. See Socop-González v. INS, 208 F.3d 838, 842-43 (9th Cir. 2000).

After considering the arguments, the Court determines that an equitable doctrine such as administrative estoppel is not applicable in cases, such as this one, involving the Congressionally established deadline for DV applicants. See Carrillo-González v. INS, 353 F.3d 1077, 1079 (9th Cir. 2003) ("We hold that the doctrine of equitable tolling has no application in cases involving the Congressionally-mandated, one-year deadline of the DV Lottery Program").[1] As such, the Court determines that Plaintiffs' argument fails.

---

1. Furthermore, even assuming that the Court could apply Administrative Estoppel and taking Plaintiffs allegations as true, Plaintiffs' Administrative Estoppel argument fails because Plaintiffs cannot establish the second element. The allegations presented by Plaintiffs, at best, lead to the inference that Defendant mistakenly made the false representations to Plaintiffs that it was processing the applications and that the visas would be issued in short order. None of the allegations, even if taken as true, are sufficient to show that Defendant made the false representation while knowing that they were false.

CIVIL NO. 09-1253 (JP)            -14-

## IV.  CONCLUSION

Thus, the Court holds that the complaint should be dismissed because the Court lacks jurisdiction.  In accordance with this Opinion and Order, the Court will enter a separate judgment.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of February, 2010.


                                             s/Jaime Pieras, Jr.
                                          JAIME PIERAS, JR.
                                     U.S. SENIOR DISTRICT JUDGE